(128 App. Div. 20.)

### BEERS v. STRONG.

(Supreme Court, Appellate Division, Third Department. September 17, 1908.)

1. EXECUTORS AND ADMINISTRATORS — DISTRIBUTION OF ESTATE—NONPAYMENT OF LEGACY—ACTIONS.

Under Code Civ. Proc. § 1819, providing that where, after the expiration of one year from the granting of letters testamentary, an executor refuses on demand to pay a legacy, the person entitled thereto may maintain an action against him, an executor who refuses to pay a legacy on proper demand is liable to an action at law, and he cannot raise the objection that the Surrogate's Court is the tribunal in which the payment of the legacy should be enforced.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 1274–1277.]

2. SAME—PLEADING—PROOF.

In an action under Code Civ. Proc. § 1819, against an executor failing to pay a legacy, it must be alleged and proved that he refused to pay the legacy on proper demand; demand and refusal being conditions precedent to the right to maintain the action.

3. SAME—EVIDENCE—QUESTIONS FOR JURY.

In an action against an executor for his failure to pay a legacy, evidence *held* to require the submission to the jury of the issues whether the legacy was paid, and whether, if not paid, payment was demanded of and refused by him.

Appeal from Trial Term, Delaware County.

Action by Cyrus A. Beers, administrator of Mary Jane Beers, deceased, against Thomas S. Strong, executor of Mary Smith, deceased. From a judgment for plaintiff, and from an order denying a motion

for a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Selah B. Strong (Robert C. Beatty, of counsel), for appellant.

Neish, More & Neish (Alexander Neish, of counsel), for respondent.

JOHN M. KELLOGG, J. The will of Mary Smith, of which the defendant is the executor, gave to Mary J. Beers $500. Immediately after the will was admitted to probate the executor mailed to Miss Smith a release and discharge, saying that when the same was returned to him he would pay her $475, being the amount of the legacy less the succession tax of $25. The release was executed and returned to him, and immediately he forwarded his check to her for that amount. The check was dated November 4, 1895, and was mailed to the legatee about that time. The letter from the defendant inclosing the release was addressed to the legatee at Walton, Delaware county, N. Y. It was written October 10th, to which she replied October 29th, saying that the letter had remained in the post office over a week, but that she returned the paper and "I shall watch the post office for the check." The check was mailed to her November 4th to the same address. This action is brought by her administrator to recover the legacy, claiming that the check never has been paid. She died intestate in March, 1905, and shortly thereafter the check and the letters above referred to from the executor were found in an envelope in her trunk; the check unindorsed. The plaintiff was thereupon duly appointed administrator of her estate, indorsed the check as such administrator, and his attorney, in June, 1905, presented it at the bank upon which it was drawn and demanded payment, which was refused. It does not appear upon what ground payment was refused, or what took place at the time of the demand and refusal; the evidence simply showing the conclusion that payment was demanded and refused. It does not appear that any other demand was made upon the defendant for payment, or that his attention was called in any way to the matter until action brought.

The Surrogate's Court is the tribunal which administers the affairs of decedents, and the payment of legacies and distributive shares is ordinarily enforced through proceedings in that court. It is provided by section 1819 of the Code of Civil Procedure that if an administrator, after the lapse of one year from his appointment, refuses upon demand to pay a legacy, an action may be brought against him therefor. After such refusal he is liable to an action at law, and he cannot raise the objection that the Surrogate's Court is the tribunal in which payment of the legacy should be enforced. This provision of the Code does not mean that any executor, after the lapse of one year, may be sued in an action at law for a legacy; but the fact must be alleged and proved that he has refused to pay the legacy upon proper demand therefor. The demand and refusal are therefore conditions

precedent to the right to maintain this action, and should be alleged and proved.

The court submitted to the jury the question whether the legacy had in fact been paid, and refused to submit the question whether demand for payment and a refusal had been made, and refused to charge that if no demand had been made there could be no recovery, to which refusals the defendant excepted. I think it was error to refuse to submit those questions to the jury. If the check had been presentes to the bank in due course of business, and it had refused payment, such refusal might be equivalent to a demand upon the executor and a refusal by him, as he had constituted the bank in a way his representative for making the payment and had authorized a demand upon it therefor. But the presentment of the check after 10 years from its date, indorsed by a so-called administrator of the payee, does not as a matter of law establish a proper demand upon the executor and a refusal. It does not appear what took place at the bank. It may be that the money with which to pay this check was still upon deposit, but that the bank felt that so long a delay threw suspicion upon the check, and that payment should not be made without proper verification. It may have felt that a certificate that the plaintiff was the administrator of the payee was necessary and proper. It may have had no knowledge as to the signature of the payee or the identity of the attorney making the demand. There are so many good reasons why the bank might not at the moment be willing to pay a check presented in the manner in which this was that it cannot be said as matter of law that the failure of the bank to pay the check upon presentation was equivalent to refusal of payment by the defendant. Instead of the facts which constitute the demand and refusal being shown, we are simply furnished the conclusion that payment was demanded and that:

"They declined to pay. I demanded payment, and they refused to pay it."

The legatee, by not presenting the check in due course of business, had in fact discredited it, and the unwarranted delay in presentment justified the bank in taking reasonable and proper precautions to verify it and ascertain its history. The delay and unbusinesslike methods of the payee quite probably brought about the failure of the bank to pay the check, and her carelessness, and not the negligence or wrongful act of the defendant, quite probably is the cause of the nonpayment of the check.

The summons and complaint in this case was served on the 23d day of June, 1905. The alleged demand upon the bank was a day or two before that time. The complaint was verified upon the 8th day of February, 1905, about four months prior thereto. No communication was had, or apparently attempted, with the defendant, after the check was presented, until action brought; and it does not appear that his attention was called to the nonpayment of this legacy from the time he received the release until the summons was served upon him. The fact that the legatee never made any personal demand upon him from the time the release was delivered to him is some evidence that in some way the plaintiff's claim had been satisfied, as it is not usual for a payee of a check representing a legacy to allow so long a period to

elapse without demanding payment. The silence of the legatee for all the years since the release was given, and the fact that she never made any claim that the legacy was unpaid, are circumstances properly bearing upon the question whether she had not been paid otherwise. The same long lapse of time, and the failure to present a check to a bank for 10 years, was enough to arouse the suspicion of the bank, and to in a way justify its refusal to pay until the facts were inquired into. Taking a position most favorable to the plaintiff, it was a question of fact for the jury to determine whether the presentment of this check, without explanation, to the bank, so long a time after it was dated, the presentment being made by an alleged attorney of the alleged administrator of the payee, is evidence of a want of funds with which the check might properly be paid. If funds still remained in the bank sufficient to pay the check, and the bank, for purposes of caution or verification, refused then to pay it, it cannot be said that such failure to pay was a demand upon the executor for the payment of the legacy and a refusal. It is quite probable that, when the bank failed to pay the check, if personal demand had been made upon the executor, he would have directed payment of the check, or that circumstances might have been discovered which satisfactorily solved the mystery connected with the check and its nonpresentment.

I think there were two questions of fact, one of which was submitted to the jury, and the other withheld from it: (1) Was the legacy paid? (2) If not paid, was payment demanded of the executor and refused by him?

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except SEWELL, J., not voting; SMITH, P. J., and COCHRANE, J., concurring in result only.